**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ailea Toback, | No. CV-20-01971-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Ailea "Enma" Toback's application for child insurance benefits by the Social Security Administration ("SSA") under the Social Security Act. The Court has reviewed the briefs (Docs. 13, 14, 15) and Administrative Record ("AR") and now affirms the Administrative Law Judge's ("ALJ") decision (AR at 24-34).

**I.   Background**

Plaintiff filed an application for child disability insurance benefits[1] on March 30, 2017, alleging a disability beginning on January 12, 2011. (AR at 24). Plaintiff's claim was initially denied on June 15, 2017, and upon reconsideration on September 1, 2017. (*Id.*) A hearing was held before an ALJ on August 22, 2019. (*Id.* at 42-70). Plaintiff was 26 years old at the time of the hearing and had not held previous employment that rose to the level of substantial gainful activity. (*Id.* at 26, 49-50.) Plaintiff's application was denied by the ALJ on September 23, 2019. (*Id*. at 34). Thereafter, the Appeals Council

---

[1]   SSA regulations allow a child of a wage earner to apply for disability insurance benefits after the child turns 18 for a disability that began before the age of 22. 20 C.F.R. § 404.350(a)(5).

denied Plaintiff's request for review of the ALJ's decision and this appeal followed.

Upon considering the medical evidence and opinions, the ALJ evaluated Plaintiff's disability claim based on the following severe impairments: (1) autism spectrum disorder; (2) nonverbal learning disorder; (3) major depressive disorder; (4) anxiety; (5) mood disorder; (6) gender dysphoria; and (7) type 2 bipolar disorder. (*Id.* at 27). Although the ALJ noted that these severe impairments limited Plaintiff's ability to perform basic work activities, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with several non-exertional limitations discussed in more detail below, and thus was not disabled. (*Id.* at 29, 34).

## II.     Legal Standards

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. §404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At

step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

### III. Analysis

Plaintiff raises two issues on appeal. (Doc. 13). First, Plaintiff argues the ALJ erred when evaluating the opinions of Christopher Nicholls, Ph.D., Sally Logerquist, Ph.D., Aynne Henry, Ph.D., Bridget Gaffney, MA, and Julianne McKenzie, M.Ed. Second, Plaintiff argues the ALJ erred when rejecting Plaintiff's symptom testimony. Plaintiff contends this case should be remanded for computation and award of benefits. (*Id.*)

### A. The ALJ did not err in evaluating the opinion evidence

In her opening brief, Plaintiff argues that the ALJ erred when assessing the opinions of Christopher Nicholls, Ph.D., Sally Logerquist, Ph.D., Aynne Henry, Ph.D., Bridget Gaffney, MA, and Julianne McKenzie, M.Ed. (Doc. 13 at 10-16.). In response, the Commissioner argues that Plaintiff's challenges to the ALJ's evaluation of these opinions are premised on outdated regulations and case law, ignoring recent changes to the SSA's regulations related to the evaluation of medical opinion evidence. (Doc. 14 at 8-16). The Commissioner further argues that "[t]he ALJ properly evaluated the opinions under the applicable regulations." (*Id.* at 16-21.) In reply, Plaintiff seems to acknowledge the correctness of—and, at a minimum, does not dispute—the Commissioner's statements regarding the applicable regulatory and legal standards but argues that, "[r]egardless of the regulatory change," the ALJ committed reversible error. (Doc. 15 at 2-8.)

As an initial matter, the Commissioner's brief correctly sets forth the applicable

standards for evaluating the medical opinion evidence in this case. The new regulations eliminate the previous hierarchy of medical opinions. *See* 20 C.F.R. § 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources. . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions . . . are supportability . . . and consistency . . . ."). These regulations apply to all applications filed after March 27, 2017. *Id.* Because Plaintiff applied for disability benefits on March 30, 2017, the new regulations apply to this case.

On the merits, and as discussed in more detail below, Plaintiff has not established that the ALJ committed error when evaluating the opinion evidence.

### 1. Christopher Nicholls, Ph.D.

In April 2010, Dr. Nicholls conducted a "Psychoeducational Evaluation" of Plaintiff. (AR at 1168.) At the time of the evaluation, Plaintiff was 17 years old and in 11th grade. (*Id.*) Dr. Nicholls ultimately opined that Plaintiff:

> [I]s a "twice exceptional" individual. Although [Plaintiff] has a gifted level of verbal intellectual abilities and superior academic skills, [Plaintiff] additionally demonstrates symptoms of a nonverbal learning disability syndrome with primary difficulties in social adaptation and processing speed efficiency. While this is similar to Asperger's syndrome, [Plaintiff] does appear to have "theory of mind" capabilities, does not engage in significant over focus upon specific topics, and does have some flexibility in terms of [Plaintiff's] interests. [Plaintiff] nevertheless has a reactive, rigid, and rule-bound cognitive style, with an excellent vocabulary and facile verbal skills, combined with relative weakness in the skills of visual attention, persistence, and cognitive flexibility. Although adept at reading and writing, [Plaintiff] has difficulty with the fluency of [Plaintiff's] performance of academic tasks, and struggles with mathematics. To some degree, [Plaintiff's] mathematics difficulty appear[s] to be tied to [Plaintiff's] rigidity and refusal to focus upon or clarify the strategies [Plaintiff] uses in solving problems, which complicates matters by preventing [Plaintiff] from learning about techniques to bypass [Plaintiff's] difficulties. [Plaintiff] also has significant slowing in [Plaintiff's] rapid retrieval of automatic math facts, however, and additional math anxiety/phobic reactivity. A true understanding of [Plaintiff's] written language capabilities is precluded by [Plaintiff's] refusal to comply with directions in complying with task demands. Indeed, [Plaintiff's] general

> style appears to be inflexible, rigid, and [Plaintiff] has a "razor edge temperament." Although [Plaintiff] appears to be oppositional, [Plaintiff] seems to utilize a highly linear, rule-bound processing style, which is derailed by ambiguity. Overall, [Plaintiff] seems to lack of appreciation of the "big picture," and although [Plaintiff] does not seem to lack an awareness of social conventions, [Plaintiff] tends not to access that knowledge, in the moment it is needed.

(*Id.* at 1172-73.) In the "recommendations" section of the evaluation form, Dr. Nicholls went on to observe that "it may be useful to reinterpret [Plaintiff's] behavior as anxiety driven and [Plaintiff's] inability to flexibly consider the demands of the task," that Plaintiff "appears to have rigid beliefs systems which prevent [Plaintiff] from managing demands," that "[u]sing [Plaintiff's] excellent verbal skills might allow [Plaintiff] to verbalize what [Plaintiff] has difficulties with," and that Plaintiff "has global difficulties in the area of 'executive function.'" (*Id.* at 1173.) Dr. Nicholls concluded by stating that "[t]he main concept is that [Plaintiff] needs to become acceptant of [Plaintiff's] own unique personality, to embrace [Plaintiff's] areas of strength and ability, and to recognize [Plaintiff's] need to systematically approach areas that prove difficult in [Plaintiff's] life." (*Id.*)

The ALJ characterized Dr. Nicholls's report as setting forth the opinion that Plaintiff "had deficiencies in reciprocal social interaction resulting in mild to moderate interference in everyday social interaction," "an inability to flexibly consider the demands of the task," and "global difficulties in the area of executive functioning." (*Id.* at 31.) So characterized, the ALJ stated that Dr. Nicholls's opinion was "persuasive" because (1) it was supported with specific evidence, including Plaintiff's performance on the Social Responsiveness Scale, and (2) it was "consistent with the longitudinal medical evidence of record, which . . . indicates that [Plaintiff] continued to have some limitations due to mental impairments, but that these symptoms greatly improved with treatment." (*Id.*)

Plaintiff argues that the ALJ committed error with respect to Dr. Nicholls's opinion. (Doc. 13 at 11-12.) First, Plaintiff argues that the ALJ implicitly rejected some of Dr. Nicholls' opined-to limitations without providing any explanation for the rejection. (*Id.*)

More specifically, Plaintiff takes issue with the ALJ's determination, when formulating Plaintiff's RFC, that Plaintiff could "carry out instructions not exceeding the complexity of GED reasoning level 2." (AR 29.) Plaintiff contends this assessment conflicts with Dr. Nicholls's opinion because level two reasoning requires dealing with variables "on a more than occasional basis," whereas Dr. Nicholls opined that Plaintiff was unable to flexibly consider the demands of the task, had global difficulties in the area of executive function, and performed poorly on all tasks requiring focused and sustained visual attention. (Doc. 13 at 11-12.) Second, Plaintiff argues that the ALJ further erred by characterizing Dr. Nicholls's opinion as "mild to moderate social limitation consistent with improved symptoms from treatment," because Dr. Nicholls did not define the terms "mild" and "moderate" and did not discuss any evidence that Plaintiff's symptoms improved with treatment. (*Id.* at 12.)

In response, the Commissioner disagrees with Plaintiff's contention that the ALJ implicitly rejected some of Dr. Nicholls's opined-to limitations, arguing that Plaintiff is "simply offer[ing] a translation of Dr. Nicholls's opinion that differs from the ALJ's reasonable translation of the opinion." (Doc. 14 at 16-17.) As for the determination that Plaintiff could perform level two reasoning, the Commissioner argues this determination was consistent with Dr. Nicholls's opinion and consistent with Ninth Circuit opinions recognizing that an ability to perform simple, routine tasks is consistent with level two reasoning. (*Id.*)

The Court finds no error in the ALJ's evaluation of Dr. Nicholls's opinion. As noted, that opinion was not solicited for the purpose of evaluating whether Plaintiff was disabled—rather, it was a "Psychoeducational Evaluation," performed when Plaintiff was 17 years old and in 11th grade. (AR 1168.) Given this backdrop, the ALJ necessarily had to engage in some degree of interpretation when translating how Dr. Nicholls's assessment of Plaintiff's capacity to function in an educational environment would map onto the considerations relevant in the SSA disability context. Although it is possible to interpret Dr. Nicholls's opinion as suggesting that Plaintiff had more than "mild to moderate

interference in everyday social interaction," it was rational for the ALJ to interpret it in that manner. And "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

For similar reasons, the ALJ did not err by simultaneously characterizing Dr. Nicholls's opinion as "persuasive" and determining, as part of Plaintiff's RFC, that Plaintiff could carry out instructions not exceeding the complexity of level two reasoning. As the Ninth Circuit has explained, level two reasoning consists of "applying common sense to carry out detailed but uncomplicated instructions and dealing with problems involving a few variables." *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015). *See also Turner v. Berryhill*, 705 F. App'x 495, 498-99 (9th Cir. 2017) ("[L]imiting Turner to 'simple, repetitive tasks,' which adequately encompasses Turner's moderate difficulties in concentration, persistence, or pace, is compatible with jobs requiring Level 2 reasoning."). It was rational for the ALJ to interpret Dr. Nicholls's opinion of Plaintiff as consistent with an ability to perform level two reasoning, even if other interpretations of Dr. Nicholls's opinion (such as those offered in Plaintiff's brief) are also plausible.

Finally, as for the ALJ's characterization of Dr. Nicholls's opinion as a determination that Plaintiff had "improved symptoms from treatment," it is difficult to see how this characterization was erroneous given that Dr. Nicholls himself stated, in the evaluation report, that Plaintiff's referral to a new therapist "for further counseling . . . has reportedly been of great benefit" and that Plaintiff's "Mother feels that [Plaintiff's] medications have helped [Plaintiff] significantly in dealing with that were previously very high levels of anxiety." (AR at 1168.) At any rate, the record is replete with other evidence that Plaintiff did, in fact, experience improvement with treatment. (*See, e.g., id.* at 709 ["Pt is doing well. Looking for a job. School good. Pt is handling stress better [with] ↑ Zoloft . . . . Pt is more verbal now."]. *See also id.* at 566, 583, 590, 595, 597, 702, 705, 708, 752.)

**2.    Sally Logerquist, Ph.D.**

In December 2016, Dr. Logerquist conducted a psychological evaluation of

Plaintiff. (AR 1176-81.) The purpose of the evaluation was "to determine whether [Plaintiff's] current behavioral characteristics and history meet the criteria for an autism spectrum disorder." (*Id.* at 1176.) Dr. Logerquist opined, among other things, that Plaintiff "demonstrates deficits in social communication and social interactions"; "demonstrates deficits in some nonverbal communicative behaviors used for social interaction"; "does not respond consistently when someone else's mood changes"; "demonstrates deficits in developing, maintaining and understanding relationships"; "was ok with changes as long as [Plaintiff] was not thrown into a group without prior notice"; and "does not possess the daily living skills that are necessary for living independently." (*Id.* at 1178.) Notably, in the final section of the report, under the heading "Occupational Considerations," Dr. Logerquist opined that, "[w]ith support, [Plaintiff] should be able to find an employment situation for which [Plaintiff] is best suited." (*Id.* at 1181.)

The ALJ concluded that Dr. Logerquist's opinion was "less persuasive than other opinions" and provided the following three reasons in support of this conclusion: (1) "there is minimal objective support for the limitations opined"; (2) "Dr. Logerquist noted that [Plaintiff's] symptoms had improved with appropriate medication and therapeutic intervention, but went on to indicate more limiting restrictions than previously opined by Dr. Nicholl's [sic]"; and (3) the opinion was "based on an evaluation that occurred almost 2 years after [Plaintiff] turned 22 and is not consistent with the medical evidence of record during the relevant period." (*Id.* at 32.)

Plaintiff argues that ALJ erred in rejecting some of Dr. Logerquist's opined-to limitations. (Doc. 13 at 13.) As for the ALJ's first proffered reason (minimal objective support), Plaintiff contends "[t]his is far too broad to meet the standard of specific and legitimate under *Lester*." (*Id.*) As for the ALJ's second proffered reason (improvement with treatment and medication), Plaintiff argues that the ALJ failed "to cite the records which show improvement with treatment and medications" and notes that there is a variety of evidence that Plaintiff "failed every attempt at independent living." (*Id.*) Plaintiff does not, in contrast, address the ALJ's third proffered reason (nearly two-year gap between the

1 end of the relevant period and the evaluation).

2 In response, the Commissioner argues that the ALJ's first two proffered reasons were valid reasons for rejecting a medical opinion under current SSA guidelines and are supported by the record (Doc. 14 at 18) and that the ALJ's final proffered reason "further supports the consideration of consistency, because Dr. Logerquist's opinion based on a December 2016 evaluation was simply inconsistent with the therapy notes and other evidence from 2011-2015" (*id.* at 18-19).

The Court finds no error in the ALJ's evaluation of Dr. Logerquist's opinion. As discussed above, the "most important factors" an ALJ must consider when evaluating "the persuasiveness of medical opinions . . . are supportability . . . and consistency." *See* 20 C.F.R. § 416.920c(a). Here, the ALJ properly focused on the supportability and consistency of Dr. Logerquist's opinion and found that both were lacking. These findings were supported by substantial evidence—as discussed in Part III.A.1 above, there is ample evidence in the record from which the ALJ could have rationally concluded that Plaintiff experienced improvement from medication and treatment, and it was also rational for the ALJ to conclude that Dr. Logerquist's opinion was inconsistent with Dr. Nicholls's opinion. Finally, although Plaintiff does not address the sufficiency of the ALJ's third rationale for finding Dr. Logerquist's opinion to be less persuasive than other medical opinions—the nearly two-year gap between the end of the disability period and the time of the evaluation—the Court agrees with the Commissioner that this provides further support for the ALJ's determination.

**3.     Aynne Henry, Ph.D.**

In July 2019, Dr. Henry conducted a "Mental Residual Functional Capacity Assessment" of Plaintiff. (AR at 1824-34.) In the check-box portion of the assessment, Dr. Henry opined that Plaintiff had "severe" limitations outside the home in understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (*Id.* at 1824-25.)

The ALJ concluded that Dr. Henry's opinion was "not persuasive" for four reasons:

(1) "the provider gave no support for such severe limitations, rather included a report dated July 2019, in which the provider simply dismissed all prior treatment as inadequate"; (2) "the opinion is not consistent with the longitudinal medical evidence of record during the relevant period, which indicates that [Plaintiff] was fully competent with activities of daily living, was able to live independently, traveled alone to Comic Conventions, and spent a considerable amount of time with friends there"; (3) "[t]his opinion is also inconsistent with other objective testing during the relevant period, as well as the 2014 report by [Plaintiff's] mother that [Plaintiff] dropped out of college due to reading issues"; and (4) "Dr. Henry, herself, notes that she is not a specialist in the area of autism spectrum disorder." (*Id.* at 32-33.)

Plaintiff argues that the ALJ gave insufficient and/or unsupported reasons for rejecting Dr. Henry's opinion. (Doc. 13 at 13-15.) However, Plaintiff only specifically addresses the ALJ's first (lack of support) and fourth (lack of specialization) proffered reasons, arguing that the former is baseless because "Dr. Henry gave a lengthy discussion of the basis of his opinion" (*id.* at 13) and the latter is baseless because the ALJ "failed to defer to an Autism specialist or any of the medical opinions in the record" (*id.* at 15). Otherwise, Plaintiff's discussion of Dr. Henry simply consists of summarizing Dr. Henry's opinions and criticizing the ALJ for not taking Dr. Henry's opinions into account when assessing Plaintiff's credibility. (*Id.* at 14-15.)

Plaintiff has failed to establish that the ALJ committed reversible error when assessing Dr. Henry's opinion. As noted, one of the "most important factors" under the new SSA regulations is the "consistency" of a medical opinion. *See* 20 C.F.R. § 416.920c(a). Here, the ALJ discounted Dr. Henry's opinion because it was inconsistent with Plaintiff's activities of daily living. This is, and always has been,[2] a valid basis for discounting a medical opinion and substantial evidence supports the ALJ's finding of

---

[2] *See, e.g., Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) ("Such a conflict may justify rejecting a treating provider's opinion."); *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) ("The ALJ noted, contrary to Dr. Reaves's conclusion that Morgan suffered from 'marked limitations,' that the evidence established that Morgan adequately copes with the social aspects of daily living . . . .").

inconsistency. In particular, it was rational for the ALJ to conclude that Dr. Henry's opinion that Plaintiff had "severe" limitations in the areas of "social interaction" outside the home and "travel[ing] in unfamiliar places or us[ing] public transportation" (AR 1825) were inconsistent with the undisputed evidence that Plaintiff had flown by herself to New Mexico to attend an art program (*id.* at 52) and twice flown by herself to Chicago to visit friends and attend comic conventions (*id.* at 57-60).

### 4. Bridget Gaffney, MA, & Julianne McKenzie, M.Ed.

Plaintiff briefly argues that the ALJ erred in discounting the lay opinions of Bridget Gaffney, MA, and Julianne McKenzie, M.Ed. (Doc. 13 at 15-16).

Nonmedical sources may testify about how a claimant's symptoms affect the claimant's activities of daily living and ability to work. 20 C.F.R. § 404.1529(a). Such testimony is "competent evidence" that an ALJ may disregard by giving "reasons germane to each witness for doing so." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017). "One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence." *Lewis*, 236 F.3d at 511.

In 2019, Bridget Gaffney, MA, and Julianne McKenzie, M.Ed., provided lay source statements as to Plaintiff's level of functioning. (AR at 1862-78). They opined that Plaintiff would have low levels of independence in a work environment, in addition to behavioral deficits with social interaction, communication, and self-management. (*Id.*) The ALJ found that these lay source opinions were less persuasive than other opinions in the record because, although they may have been an accurate description of Plaintiff's limitations in 2019, they were inconsistent with the medical evidence of record during the 2011-2015 period relevant to this claim. (*Id.* at 32). In reaching this conclusion, the ALJ cited numerous medical records from the relevant period that contradicted the opinions of these lay sources. (*Id.*, citing *id.* at 566, 569, 583, 590, 595, 597, 605, 607, 702, 705, 708, 709, 752, 1168). The conflicts in the medical evidence and the date of the opinions were germane reasons to find these opinions less persuasive. The ALJ did not commit error here.

### B. The ALJ provided specific, clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony

During the hearing, Plaintiff testified to periods of disabling panic, problems interacting with people, and the inability to function independently. (AR at 46-64.)

The ALJ discounted Plaintiff's symptom testimony for an array of reasons, including that (1) "the longitudinal medical evidence of record indicates that [Plaintiff's] impairments resulted in some limitations, but not to the extent alleged," because Plaintiff "was able to work through these issues while in high school," "on several occasions, [Plaintiff's] providers noted that [Plaintiff's] anxiety was manageable," and "during the relevant period, [Plaintiff's] providers noted improvement with treatment"; (2) although Plaintiff dropped out of college, Plaintiff "remained in Flagstaff, where [Plaintiff] lived independently," and Plaintiff's "mother reported that [Plaintiff] stopped going to classes due to a reading issue, as opposed to anxiety"; (3) "in January 2012, [Plaintiff's] mental health provider noted that [Plaintiff] was making good progress towards anxiety management despite academic challenges"; (4) Plaintiff "was not seeing a therapist in January 2014"; and (5) after dropping out of college, Plaintiff moved to New Mexico to attend an art program. (*Id.* at 30-31.)

Plaintiff argues that the ALJ failed to provide specific, clear and convincing supported by substantial evidence for discounting Plaintiff's symptom testimony. (Doc. 13 at 16-18.) Plaintiff also faults the ALJ for "fail[ing] to address Dr. Henry's opinion about [Plaintiff's] capacity to testify." (*Id.* at 17.) The Commissioner argues that the ALJ properly examined the evidence to determine that the record did not support Plaintiff's testimony as to the severity of the symptoms alleged. (Doc. 14).

An ALJ must evaluate whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (citation omitted). "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject

a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). However, the ALJ may "reject the claimant's testimony about the severity of [the] symptoms" provided that the ALJ also explains his decision "by providing specific, clear, and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015).

Applying these standards, the Court finds no error in the ALJ's assessment of Plaintiff's symptom testimony. The ALJ identified medical records indicating that Plaintiff's anxiety was manageable and improving with treatment and medication. (*See, e.g.,* AR at 590, 595, 597, 605, 607, 708, 709, 1168.) This is a permissible basis for discounting symptom testimony. *Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006). The ALJ also identified inconsistencies between Plaintiff's testimony and Plaintiff's activities of daily living, including living in Flagstaff and traveling to New Mexico to attend art classes. Such inconsistencies also serve as a permissible basis for discounting a claimant's symptom testimony. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) ("[T]he ALJ may consider inconsistencies . . . between the testimony and the claimant's conduct . . . and whether the claimant engages in daily activities inconsistent with the alleged symptoms. While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (cleaned up). Although the Court recognizes that Plaintiff continued to experience difficulties while participating in those activities, and that a different factfinder could have therefore found that the activities were not inconsistent with Plaintiff's testimony, it was rational for the ALJ to reach the conclusion he reached. Finally, the ALJ also correctly noted that Plaintiff failed to seek treatment during portions of the relevant period. This, too, serves as a permissible basis for

discounting a claimant's symptom testimony. *Id.* at 1113 ("We also reject Molina's claim that the ALJ erred in relying on Molina's failure to seek or follow prescribed treatment.").

Last, as for the argument that Plaintiff was highly symptomatic during the hearing, although the Court acknowledges some instances in the hearing transcript where Plaintiff was unable to answer a question or responded with "I don't know," there are many other instances where Plaintiff was able to provide detailed responses to the ALJ's questions. This was especially true in the series of questions related to Plaintiff's schooling, travels, independent living situation, and social interactions with friends. There is no basis to conclude that Plaintiff did not understand the questions or was otherwise unable to participate in the hearing.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the ALJ is **affirmed**. The Clerk of Court is directed to enter judgment accordingly and dismiss this action.

Dated this 6th day of January, 2022.

Dominic W. Lanza
United States District Judge